Good morning, Your Honors. My name is Michael J. Kenley, representing the appellant Jesse Kenley. I realize the certificate of appealability the court issued first asked the question whether the defendant, whether the appellant suffered prejudice, and then secondly, whether the court abuses discretion in not granting an evidentiary hearing. I think that question is answered by a brief quote from United States v. Nahudel. Under, in the court statement on page 327, under the Hill v. Lockhart standard, the quality of the advice that Nahudel's counsel gave him during the plea hearing determines the voluntariness of his plea. The record at this stage does not disclose what that advice was, except it goes on to say that he did not request continuance. The thing we have here, if Your Honors please, is that Mr. Kenley pled guilty to an offense, to two offenses, Hobbs Act robbery and conspiracy, that he had an absolute defense to, namely a statute of limitations. That on its face is prejudicial. And under the standard for, under 2255B, unless the motion and files and records, et cetera, conclusively show that the prisoner is entitled to no relief, the court shall grant a prompt hearing, et cetera, et cetera. Is it really on its face prejudicial if, for example, a defendant perceives that he's going to get a better deal by not raising the statute of limitations? That is on its face. Again, I submit to the court that the fact that he pled guilty to an offense, that he had an absolute defense to, and an attorney did not advise him of that, that's prejudicial on its face, and it certainly takes it out of the area where it can be conclusively shown that it was no prejudice. The big picture of it. But talking about on its face. Right. Don't we need to look at what he's alleged here to determine whether or not there's any prejudice? Because it doesn't seem to me that either his petition or the record indicates that, had he been notified that he had a defense, that he would have done anything different than what he did. Well, I understand the basis for that, of course, is a big picture. The background is he's being prosecuted in the state court. The suggestion is that the Commonwealth was going to seek the death penalty. I don't think the record is absolutely clear whether they actually filed proper notices, whether they were going through with that. And then it's also suggested that even if they weren't, they were going for a felony. It's not a first-degree murder. There was a quid pro quo for that 35-year sentence. Yes, Your Honor. And the point is, if this defendant. So the question is, I know it's phrased in terms of Hill v. Walker that the question is, the prejudice is. Please talk a little more slowly so we can get you. Go ahead. Yes, of course. Number one, did the attorney give advice not consistent with the standards an attorney should adhere to? And secondly. Let's assume that the attorney didn't give the appropriate advice. I think we can. Didn't tell him. Go ahead. We still have the prejudice. Right. And the prejudice, of course, is the question in terms of gauging the prejudice is, is there a probability that the defendant would not have pled guilty but would have gone to trial? But when you break that down, the question is, what did he plead guilty to? He pled guilty to offenses which guaranteed a sentence of 35 years. Had he known that the government was in the position, in order to construct a 35-year sentence, that they had to get him to plead guilty to offenses which were beyond the statute of limitations, had he known that, an argument is certainly plausible to argue that would have given him more leverage in his negotiations with the Commonwealth and with the government. The idea being that the record shows that there was negotiations going on for a period of time and then the defendant, the appellant, claims at the last minute he's just given notice of sacred allegiance. Help me out. Why would that give him more leverage? He's facing a death penalty. So I have my choice of the death penalty or I'll take 35 years even though I have a defense to it. I'm going to let that go because I don't want to be tried where there's a death penalty involved. Why is that difficult? It seems like a pretty easy choice. Because the record is not clear, Your Honor, that he actually faced a death penalty. The record is not developed enough, just as in Nahuatl was not developed enough. We don't know. An evidentiary hearing would have shown what exactly was the record of this case. Did the Commonwealth of Pennsylvania follow the proper notices? Hold on a second. The day he entered his plea in federal court, hadn't he first been across the street, because it literally is across the street in Harrisburg, hadn't he been across the street getting ready to go to trial on the Murrah case? Yes. All right. Now, he obviously knew at that stage under Pennsylvania law whether or not the district attorney of Dauphin County had certified that this was a death case. So he knew that he was at least facing the death penalty. Obviously, you don't know what you're going to get until there's a conviction, until a jury returns a sentence. Your Honor, I don't think the record is clear on that. It has to be clear, though. Mr. Thornton's testimony indicated that the Commonwealth was going either for murder conviction, first-degree murder, death sentence, or a felony murder conviction. Same thing. If I may interject, Your Honor, with regard to felony murder, under United States v. Edmonds, he could not get the death sentence for felony murder unless he participated in the murder and Unless they said it was an intentional killing. It was intended killing. He was the Attorney General of the state. Go ahead. I'm assuming he knows Pennsylvania law. I understand. I'm just rather as an advocate. But the point is, it's not clear from the record that it's one thing to say that he was actually, there's a real, real, real possibility he would get the death penalty. The record doesn't show that. I thought his lawyers, when his two lawyers testified, I thought they went into that. I don't think they did, Your Honor. Mr. Thornton just referred to felony murder and first-degree murder. But they both testified before the district court was in Kenley's best interest to enter the plea agreement considering the fact that he was facing a possible death sentence. Am I wrong about that? Oh, that's correct. Absolutely. That was the main inducement that they said. But that's the record. You say it's not in the record. No, what's not in the record is what the evidence was, whether there was a real possibility that he would get the death penalty. What was the nature of the case? Are you hung on this word real possibility as opposed to possibility? It was, Your Honor, the Was he not facing the death penalty in state court? I don't know from this record that the Commonwealth filed the proper notices of aggravating factors to seek the death penalty. That's not in the record. The other thing I'm pointing out is just, again, the big picture, why was he even afforded this opportunity to go to federal court and plead guilty to 35 years? Yeah, I don't understand that either, but that's up to the state people. I suggest, Your Honor, it's because they perceived weakness in their case. It was mentioned by Mr. Thornton that either the government attorney or the Commonwealth attorney or both said that the witness against him, the alleged accomplice, Timothy Poole, had lied in his profits. Now, if he lied, then there's a huge credibility problem for him if he's called as a witness. The government can't call, obviously, the man to testify to perjury, and they would also have to disclose the fact that he lied as exculpatory evidence, and that in and of itself might have been a huge problem for them in successfully prosecuting this case. The very fact that he was being afforded this opportunity to go across the street... There might have been a risk in prosecuting the case. I guess that's true in so many cases, but, you know, that's something that he and his lawyer work out. Your Honor, this could have... And there is an offer on the table, and he accepted the offer. I guess the question is, would he really, had he known about the statute of limitations defense, opted for some other decision? If the court had granted a hearing, and, of course, one of my arguments in the brief is that the court abuses discretion in that the reasons it gives for not holding a hearing is that it addressed the ineffectiveness claim in the statute of limitations in the earlier decision, and that's not what happened. But the point is, if an evidentiary hearing had been held, one of the areas of interest would be what advice, what was the status of the case in terms of evidence that the Commonwealth was going to present if it went to trial? What advice was Mr. Kenley given as to how strong their case was? And I don't mean just a general opinion by the attorneys, defense attorneys, that this is a death penalty case. Of course, to many defense attorneys, I understand, is if the case, if the death penalty is even mentioned, just avoiding the death penalty in any way, shape, or form is considered a victory. But the question was for Mr. Kenley to decide. So what advice was given to him in terms of the strengths of the Commonwealth's case? And in addition, one of the specific things is, was he advised that under United States v. Edmonds, he could not be convicted, he could not get the death penalty for felony murder, even if he was convicted of that, if the jury was not convinced that he intended the killing and or participated in it. So there was room there to see. So number one, on the face of matters, he was prejudiced because he pled guilty to an offense to which he had an absolute defense. Secondly, the record is not clear what advice he was given and what the status of the Commonwealth's prosecution was. And the very fact that he was walked across the street and given that opportunity to plead guilty means that suggests that there was some problem on the government's part. Now, as to whether he would have gone to trial, on this record, I can't say that. I can't say that. Well, there's evidence to show that as compared to Naheed Dale, for example, clearly the defendant had indicated that he wanted to go to trial, he wanted to go to trial, and his attorney just overrode his will. We don't have that situation here. What we have is the defendant wanted to go ahead and take a plea, but he wanted to get the best deal he could, which is why he talked about 20 years. I submit to the Court that had he known that the government was relying on him to plead guilty to an offense to which he had an absolute defense would have been one more factor for him to consider and use as leverage with the government in negotiating a plea, and that he could for that reason have maybe been more successful to get them down to 30 years. In fact, I think the record indicates the federal prosecutor who was cross-designated, Mr. Behe, had tentatively agreed to 30 years, but the Dauphin County District Attorney would not agree to that, and that's why they went up to 35 years. So there was this back-and-forth negotiation going on. The appellant's claim, which is not really before this Court, that he was induced at the last minute, he really wasn't given a chance to think about it. The record doesn't support it, I concede. This was going on for a long time, but precisely because it was going on for a long time indicates that there was a real concern on the government's part as to how successfully they could prosecute this case and get a sentence for him, because it's quite conceivable if he had gone... Is it enough for you to show that if he had known this, he may have had more leverage in the plea? Yes. As opposed to, don't you need to at least show that he would have gone to trial? No, Your Honor. I don't think it... I realize that it phrases prejudice in that terms. If the person would not plead guilty, he would have gone to trial. But there are common-sense points in the intermediary step, which is he would not plead guilty to this particular deal. The deal was 35 years. I think it's very plausible that an evidentiary hearing would show that he would not agree to a deal for 35 years had he known about the statute of limitations, but that he probably would have agreed to if they came down a bit in their sentence altogether. But isn't that kind of claim waived with the plea? No, I don't think so, Your Honor. I don't see why it would be, frankly. My time's up. Thank you. Excuse me. Do you have any more questions? Do you have any... Okay. Thank you, Your Honor. Good morning, Your Honors. I'm William Behe with the United States Attorney's Office. I was the cross-designated prosecutor in Dauphin County. I was the prosecutor in the district court on this matter. I was the individual who was negotiating with the public defenders, and I was the one who negotiated the plea agreement. I'm the one who handled the case in district court and am handling this appeal now as well. So I'd like to start off just by quoting, in this particular case, from Strickland v. Washington because I think that's what's happening here with counsel engaging in 20-20 hindsight in 2011 and trying to tell us what would have worked or shouldn't have worked back then, even though it deals with the performance aspect and we're really focusing on prejudice. The court there said, A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time. Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case viewed as of the time of counsel's conduct. That's in Justice O'Connor's opinion. Yes. Go ahead. So what we had was an individual sitting in a courtroom in Dauphin County where death-qualified jurors were going to be selected to prosecute him for a first-degree murder case who had been going back and forth on plea negotiations from 20 to 40 to 30 and eventually settled on 35,  In essence, it was an agreement for a term of years, regardless of what charge defense counsel could construct to get him to 35 years. It's like make it work. We'll accept 35 years. Mr. Thornton, and that was the agreement with counsel that was handling the state murder prosecution. The record is replete with testimony from the public defender and from the federal public defender that this was going to be a death penalty case. They had very serious concerns that a death penalty could be arrived at. They were ready to pick a jury. So to suggest that the record isn't clear that Mr. Kenley was facing literally within an hour of deciding this case that he might be picking a jury in a death penalty case just is inaccurate. The record is replete with references by counsel to that. Judge Rambo made that finding. I just frankly don't understand how that particular matter fits in here. What we do have, though, is, as Judge Fisher noted, when you're dealing with the denial of a hearing in the 2255 context and you're focusing on a question of prejudice, the issue is, is there a reasonable probability that the defendant would have elected to go to trial rather than plead guilty? And in this case, I think, again, what defense counsel is focusing on, Mr. Kelly, is incorrect. He's focusing on the federal charges and saying, would Mr. Kenley have elected to go to trial on those federal charges or plead guilty to them if he knew about the statute of limitations? There wouldn't have been any trial. There wouldn't have been any federal charges filed regardless of statute of limitations if it wasn't predicated on the fact that we were going to end the state prosecution for a 35-year sentence in federal court no matter how we constructed it. I think counsel would be ineffective, and a classic example of ineffectiveness, if state attorneys had constructed this plea agreement to save their client from the possible death penalty or a life sentence for felony murder, and a federal public defender came in and said, you know what? You can kill this whole deal by just saying no because these are time-barred. But maybe he might have made a different decision. I mean, he knew he was in court. He knew he was in state court. He knew he was about to be tried for a homicide case, but he didn't know apparently about the statute of limitations defense. And that's what we granted the certificate of appealability on. Is that ineffective assistance of counsel? Yes, and the question is one of prejudice. And so not even addressing the performance standard, and I think I indicated in my brief, it doesn't matter whether counsel is aware of the standard. You're assuming that was deficient. Yes, just assuming that. The question is could Judge Rambo have denied this 2255 motion without a hearing based on the records, the papers, and the filings that were before it and make a determination that there was no possibility that he would be entitled to relief? And I think she could because even though it was in the context of a petition to withdraw the guilty plea, it was in essence a mini-2255 hearing because, as this court and Judge Slobert's opinion noted in affirming Judge Rambo's denial of the petition to withdraw the guilty plea, it was counsel's conduct and representation that was at the heart of those two hearings. And all of the allegations concerned his advice, and the question of credibility and believability and veracity was resolved against Kenley. So you have right now a situation where the district court had already determined that he wanted to plead guilty. That was a specific finding. Based on the record, his testimony, testimony with the counsel, she was convinced that he wanted to plead guilty and that his position to the contrary was disingenuous. So now the same judge who's familiar with all this would be presented with this single issue. Knowing all that you know about this individual and the representation of counsel and your decision that they provided effective representation, that you wanted to plead guilty, that the whole thing was about a 35-year plea. Well, of course, he didn't get a hearing before Judge Rambo asked for counsel's ineffectiveness, did he? I mean, isn't that the purpose of collateral review? He didn't get one on the 2255, and that is it. But my position is that's only needed if the court cannot conclusively tell from the record that he would be entitled to release. That's the purpose of the hearing, to develop a record. If there is one that isn't available to the court. And in this case, there were two evidentiary hearings held in May and June of 2006, at which counsel and their representation and their decisions were at the heart of the entire hearings. And Judge Rambo, listening to what Kenley said about them and how they defended their actions, their familiarity with the case, their preparedness to go to trial, and their rationale that this 35-year plea offer was something he should take, she resolved the issue of credibility and reliability and performance in favor of the attorneys and against Kenley. Now, what I'm suggesting is that was a sufficient basis for Judge Rambo to conclude that if this were, if I were to hold a hearing, meaning Judge Rambo, would I change my mind and say that with this one single issue, that he, in fact, would have withdrawn his plea? Having already determined that she found that he all along wanted to plead guilty. And I suggest that she knows better than anybody how she would have found this. But didn't Judge Rambo mistakenly believe that she had already determined the ineffective assistance of counsel question in the earlier hearing? Well, I think it's clear that the issue was not framed exactly as was counsel ineffective for not telling the defendant that he could have scuttled the whole deal by arguing a statute of limitations. But I think her point was that she overall had a hearing concerning counsel's representation, advice, and overall preparedness to go to trial and determined that Kenley all along wanted to plead guilty and counsel was effective. That's what she said. I have, in essence, resolved the issue of effective representation. I don't need to go back to it. And I think if you sent it back, that's exactly what she'd say. Kenley would say, yeah, I wanted to withdraw my plea. Was the plea agreement reached while a jury was being selected for the capital case? The final plea agreement was arrived at. There was no jury in the courtroom, as it suggested, because I would have been in the courtroom when a jury was there. Counsel was meeting with his client, looking over the individual voir dire forms and back and forth. Can it have 30 years? No. The district attorney won't accept it. 40 years is unacceptable. How about 35? And it was accepted. Why did you do that plea in state court? I don't know, to be honest. I think because I thought we could fashion it, and we had a parallel federal investigation going, that it might have made more sense at the time to do it there. And I'm not sure that it could have fashioned a 35-year sentence under existing state criminal laws. Was anything stated in the record in the state proceeding? I believe Judge Lewis addressed the defendant and said these proceedings will be on hold, because it's my understanding you're going over to federal court to plead guilty, and we'll just cancel these proceedings and take it under advisement. And the state court charges, I believe, were dismissed only after he was sentenced. But if I could, my position here in closing would be to focus on the very narrow issue before the court, and that is did Judge Rambo abuse her discretion by not holding a hearing? And I respectfully suggest the answer is no, because the record allowed her, based on all of her findings in the context of the motion to withdraw the guilty plea, to determine that he was not entitled to relief. And this was based on a review of the record and her assessment of Kenley's credibility, the explanation of counsel for the rationale for the plea that was being offered, and that in this particular case the question of prejudice is, is there a reasonable probability that had Kenley, after Judge Rambo decided he wanted to plead guilty all along, would there be a reasonable probability that he had known about the statute of limitations that he would have said, that's it, I'm a principled individual. I refuse to plead guilty to a charge that is barred by a statute. Find something else. And the question is not going to trial on the federal charges. It's would he have elected to go to trial on a death penalty case. And I respectfully suggest the answer is no. Thank you. Thank you. Mr. Kenley? If I may just respond briefly to a few points. Counsel just argued that basically the hearing on the petition to withdraw the plea was a mini-2255 hearing. And as I made clear in my brief, it certainly was not. They didn't deal with the statute of limitations issue at all, or counsel's failure to advise a defendant of the statute of limitations. In fact, the structure of the court's opinion is such that the court first dealt, back in 2006, first dealt with the statute of limitations issue and just getting it out of the way in the context of saying that the attorney who then was representing Mr. Kenley, Mr. Ward, was arguing that the whole proceedings were void because it was beyond the statute of limitations. And the court said that's simply not the law. They didn't get into ineffectiveness at all. Then, in the court's opinion under a separate section, it goes on to talk about ineffectiveness claims. So the courts clearly did not perceive this statute of limitations to be one of the ineffectiveness claims. Counsel also said that I think in good faith misrepresented my argument. I am not arguing in any shape or form that the defendant would have taken back, had decided not to plead guilty and then go to trial in federal court. There was never any suggestion that he was going to go to court, have a federal trial. The whole focus would be on the state trial. But it would be a hyper-technicality for Mr. Kenley's appeal to be denied if it was to be denied on the basis suggested by Mr. Behe, that because he would have taken his plea back, he would have gone to trial, he would have preferred to go to trial in federal court. That just was not in the offing. Lastly, with regard, just a factual matter, with regard to the jury selection procedure, I think the record makes clear that the jurors were given a questionnaire and they had filled them out or were in the process of filling them out when everybody went across the street. The jury had not been seated. Obviously, they were trying to avoid a double jeopardy problem there. Was it a death-qualified jury? I don't know, Your Honor. That, again, is one of the things. I accept 100% in Mr. Behe's statement, and the record shows the attorney said this is going to be a death penalty case. However, it's up to the prosecutor in Dauphin County to decide whether they're actually going to go forward with a death-qualified jury and seek the death penalty. I thought he was specifically assigned to handle this case. Yes. Mr. Behe was cross-designated, I believe. When you say the prosecutor, you mean the county prosecutor? Oh, the county prosecutor, right. And the idea being is were they actually in a position of filing the proper notice of aggravating factors and going to proceed, or was it going to back off a bit and say, well, let's just go with the prosecution for murder, including felony murder? That's my thought. Thank you. Thank you. We'll take it under advisement.